296 So.2d 290 (1974)
STATE of Louisiana
v.
James Ray GREEN and Horace Nicholas.
No. 54468.
Supreme Court of Louisiana.
June 10, 1974.
*291 James B. Thompson, III, Dozier & Thompson, Baton Rouge, for Horace Nicholas, Jr.
Murphy W. Bell, Director, Woodson T. Callihan, Jr., Trial Atty., Baton Rouge, for James Ray Green.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Lennie F. Perez, Asst. Dist. Atty., for plaintiff-appellee.
BARHAM, Justice.
Defendants Green and Nicholas were convicted of armed robbery, a violation of R.S. 14:64. Nicholas was sentenced to ninety-five (95) years' imprisonment and Green received a seventy-five year sentence, each sentence without benefit of parole, probation, or suspension. From their convictions and sentences defendants appeal, relying on 16 bills of exceptions, some bills reserved by one defendant are identical to bills reserved by the other.
Green and Nicholas stand convicted of the armed robbery of Armando Sanchez Nieto, a Spanish seaman whom they met while he and a shipmate were on shore leave in Baton Rouge, Louisiana. The four men met in the Fiesta Lounge, Baton Rouge, Louisiana, on an October evening in 1972. After spending the evening together drinking and playing cards, the four men set out to find some girls with whom to go dancing. They proceeded in a car belonging to one of the defendants to East Harrison Street, where defendant Nicholas approached a nearby house and purportedly contacted some girls who were willing to go dancing. Nicholas returned to the car and the four men smoked outside the car while waiting for the girls to join them. Nicholas and Green suddenly armed themselves, held guns to the heads of the two seamen, and stripped them of all valuables. The two defendants then forced the two sailors to remove their shoes and lie face down on the ground. Defendant Green returned to the car and attempted to start it; defendant Nicholas fired multiple shots from the gun in his possession, killing Tomas Rodrigus and wounding Armando Sanchez Nieto. The wounded victim eventually found help and related the events of the evening to the police. Both defendants were apprehended within forty-eight hours of the incident.
Bills of Exceptions Nos. 1, 2, 7, 8 (Green) and 1, 2, 4, 5 (Nicholas)
These bills of exceptions all concern the introduction into evidence of the previously recorded testimony of Armando Sanchez Nieto, the victim of the armed robbery for which the defendants were being tried. Sanchez Nieto's testimony had been taken at a preliminary hearing held one month subsequent to the robbery and eight months prior to trial. The hearing was held at the State's request for the purpose of perpetuating Sanchez Nieto's testimony for trial in the event that the "uncertainties of winds and tide" prevented his return to testify. The bills here considered were reserved when the trial court admitted the transcript of Sanchez Nieto's testimony into evidence over defense objection, when a defense motion to strike the testimony read into the record was denied, and when motions for mistrial made after the admission of the testimony and after the denial of the motion to strike were denied.
The thrust of defendants' objections to the use of Sanchez Nieto's preliminary hearing testimony is that the State's efforts to obtain the victim's presence at trial did not constitute good faith efforts and that the State did not exercise due diligence in its attempts to secure his presence. It is therefore alleged that the defendants' Sixth Amendment right to confrontation was violated. The State concedes that the victim had expressed a willingness to return to testify at the trial of *292 the two defendants. Both the State and the defense agree that the guidelines to be used in determining the issue are C.Cr.P. Art. 295 and the federal standard set forth in Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968).
C.Cr.P. Art. 295 provides, in pertinent part:
"The transcript of the testimony of any other witness who testified at the preliminary examination is admissible for any purpose in any subsequent proceeding in the case, on behalf of either party, if the court finds that the witness is dead, too ill to testify, absent from the state, or cannot be found, and that the absence of the witness was not procured by the party offering the testimony."
In Barber v. Page, supra, the United States Supreme Court stated:
"* * * In short, a witness is not `unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial. * * *"
It was established by the State that an investigator from the District Attorney's office had checked with the local utilities companies, the credit bureau, the local office of Sanchez Nieto's employer, the local Seamen's Center and the victim's girlfriend to verify that the victim was no longer in the state. The investigator contacted the Federal Bureau of Investigation for assistance in locating the victim, and the F.B.I. agreed to work through the American Embassy in an attempt to contact Sanchez Nieto and notify the District Attorney's office if he were found. The District Attorney's office caused a subpoena to be issued and mailed to Sanchez Nieto at his parents' home, the address the victim had left with the court.
Defendants' complaints center around the late mailing of the subpoena and the District Attorney's office's failure to recontact the F.B.I. in order to ascertain whether they had been able to locate Sanchez Nieto. Testimony adduced at trial disclosed that the subpoena was mailed on June 29, 1973. Actual trial testimony began on July 17, 1973, eighteen days after the subpoena was mailed. The victim's girlfriend, Shirley Maddux, testified that regular mail took about nine or ten days, two weeks at the most, to reach the address in Spain. She further testified that Sanchez Nieto had told her that if he was notified of the trial date he could be on a plane back to Baton Rouge within 12 hours. Miss Maddux testified that she received a letter from Sanchez Nieto on July 17, 1973, the postmark of which indicated that he was in France at the time the letter was mailed.
The investigator from the District Attorney's office testified that the F.B.I. offered to notify the D.A.'s office if and when they located Sanchez Nieto.
Considering all of the circumstances, we cannot say that the State's attempts to secure Sanchez Nieto's testimony at trial were not executed in diligent good faith. The requirements of C.Cr.P. Art. 295 and the federal requirements were met by the State's efforts to secure the victim's presence. The trial court's actions in allowing the preliminary hearing testimony to be read into the record and in denying the various defense motions was not error. See State v. Jones, 261 La. 422, 259 So.2d 899 (1972). These bills of exceptions are without merit.
Bills of Exceptions Nos. 5 (Green) and 3 (Nicholas)
These bills of exceptions were reserved when the trial court overruled defendants' objections to the introduction into evidence of a .32 caliber Rossi revolver. The defendants' objections were based on an allegation that there was no showing the revolver was evidence relevant to the inquiry at the time it was introduced.
Sanchez Nieto's preliminary examination testimony reveals that he examined *293 the revolver and testified that it appeared to be one of the guns the defendants used in the robbery. He testified: "I would say that it was a gun like that." The record reveals that the gun had been recovered when the police acted on information received from Annie Green, the sister of defendant Green. Testimony adduced subsequent to the admission into evidence of the revolver revealed that bullets fired from the Rossi revolver exhibited the same class characteristics as the bullet removed from Sanchez Nieto's head.
A review of the record convinces us that there was adequate testimony to establish the relevancy of this tangible evidence prior to its admission into evidence. The trial court did not err in allowing its admission. These bills of exceptions are without merit.
Bill of Exceptions No. 4 (Green)
This bill of exceptions was reserved when the trial court sustained the State's objection to a question asked of the witness, Annie Green, by counsel for defendant Green. The following question prompted the State's objection: "Did he [Detective Gill] tell you anything about, about turning your brother loose?" The State objected, arguing that the defendant was trying to elicit hearsay evidence. the trial court ruled that the witness could answer the question but could not state what, if anything, the officer had told the witness. The witness answered the question in the negative. Green's counsel objected to the court's refusal to allow a question concerning the content of what Gill said to the witness on the ground that the information was not hearsay and reserved a bill of exceptions.
The trial court did not err in refusing to allow defense attorney to elicit hearsay testimony. Moreover, in view of the fact that the witness answered that Officer Gill did not tell her anything about turning her brother loose, there was no statement content to be elicited. This bill of exceptions is without merit.
Bill of Exceptions No. 6 (Green)
This bill of exceptions was reserved when the trial court denied defendant Green's motion for a mistrial based on a statement elicited from Detective Gill by Nicholas' counsel. During cross-examination of Detective Gill, counsel for Nicholas pursued a line of questioning begun by Green's counsel concerning a statement made by Nicholas. After intensive questioning by counsel for Nicholas, and after specifically being referred to Nicholas' written statement, Gill testified that the statement contained a disclaimer, that "he [Nicholas] stayed in the car." After counsel for Nicholas concluded his examination of Gill, and after re-direct by the State, counsel for Green moved for a mistrial. Green's counsel argued that Gill's testimony concerning Nicholas' statements violated Green's right to confrontation and contravened the ruling of the United States Supreme Court in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L. Ed.2d 476 (1968).
The Bruton case involved the admission into evidence of a witness' testimony concerning a defendant's inculpatory statement at the joint trial of the defendant and Bruton. During the course of the defendant's oral statement, which the witness Evans related, Bruton was inculpated. It is abundantly clear from the Bruton opinion, and especially from the court's analogy therein of the circumstances present in Bruton and those present in Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 974 (1965), that the offending evidence was elicited by the prosecution, and that this is the procedure proscribed by Bruton.
In the case at bar, the complained-of testimony given by Detective Gill was elicited by counsel for Nicholas and did not, in fact, inculpate defendant Green but only tended to exculpate Nicholas. At no time during the State's direct examination of Gill did the State attempt to elicit testimony concerning statements made by defendant Nicholas, either oral or written. The first questions concerning Nicholas' statement *294 were actually asked by Green's counsel. When Nicholas' counsel undertook his cross-examination of the witness, he elicited the statement quoted hereinabove and similar statements, all to the effect that Nicholas was not directly involved in the incidents which took place outside of the car.
It therefore appears that at no time did Nicholas' statements, as related by Gill, inculpate Green so as to render Nicholas one of Green's accusers and render operative Green's right to confront and cross-examine Nicholas as if he were a witness against Green. Nicholas' statements rendered him a witness in his own favor, not a witness against Green.
A discussion in the Bruton opinion concerning the federal rule governing severance, F.R.Cr.P. 14 further appears to contemplate that the Bruton rule is directed at the use by the prosecution at a joint trial of statements or confessions of one defendant when the statements inculpate the non-confessing defendant. The United States Supreme Court stated:
"* * * Rule 14 authorizes a severance where it appears that a defendant might be prejudiced by a joint trial. The Rule was amended in 1966 to provide expressly that `[i]n ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection in camera any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.' * * *"
Later in the opinion that court stated:
"The purpose of the amendment [to Rule 14] is to provide a procedure whereby the issue of possible prejudice can be resolved on the motion for severance."
Neither the attorney for Green nor the attorney for Nicholas filed a motion for severance. The State did not introduce any evidence of Nicholas' written statement. It does not appear that the State intended to do so for no notice of intent to introduce the statement appears in the record and there is no notation in the minutes that such notice was given.
In summary, we find the case of Bruton wholly inapposite to the case at bar. No denial of defendant Green's constitutionally protected right to confrontation is evidenced by the record. This bill of exceptions is without merit.
Bills of Exceptions Nos. 10 (Green) and and 7 (Nicholas)
These bills of exceptions were reserved to the trial court's denial of defendants' motion for continuance filed prior to the November, 1972, preliminary hearing. Defense counsel advanced as the bases for their motion their inability to adequately prepare for the hearing in the short period of time which elapsed between their appointment and the date of the preliminary examination (one week), and their lack of knowledge of the nature of the charges which were to be the subject of the hearing. (Their appointments were to represent the defendants on charges of armed robbery, attempted murder and murder. According to the State's brief, the Grand Jury returned armed robbery, attempted murder and murder indictments on the day before the preliminary examination commenced).
While it cannot be disputed that the preliminary examination commenced only seven days after counsel's appointments, the trial court did in fact recess the hearing prior to the time that the State concluded its direct examination. The hearing resumed eight days later. We are of the opinion that these eight days, added to the seven days which elapsed from first knowledge that the hearing would be held until commencement of the hearing, gave the defense counsel adequate time to prepare their cross-examination. In addition, defense counsel had the unique advantage of the eight day recess in which to prepare their cross-examination after hearing the bulk of the witness' testimony on direct examination. Counsel's argument that there was inadequate preparation time is without merit.
*295 Counsel's argument that they were not aware of the nature of the charge made the subject of the preliminary hearing is likewise to no avail. The three charges pending against both defendants arose out of a single transaction. It does not appear from the record that counsel made any request for additional particulars prior to the commencement of the preliminary hearing. We find this argument to be without merit.
Bills of Exceptions Nos. 9 (Green) and 6 (Nicholas)
These bills of exceptions were reserved to the trial court's denial of defendants' motion for new trial. The bases of these motions were the trial court's admission into evidence of the preliminary hearing transcript of Armando Sanchez Nieto's testimony and its denial of a mistrial motion based on Detective Gill's testimony concerning Nicholas' written statement. Both of these allegations of error have been considered in discussions of other bills of exceptions and found to lack merit.
For the reasons stated hereinabove, the defendants' convictions and sentences are affirmed.