328 So.2d 91 (1976)
STATE of Louisiana
v.
Jerry GHORAM.
No. 56586.
Supreme Court of Louisiana.
February 23, 1976.
*92 Grisbaum & Kleppner, Ferdinand J. Kleppner, Metairie, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., James E. Boren, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Jerry Ghoram was indicted by the grand jury for the Parish of East Baton Rouge for the murder of George Davis committed on December 27, 1972. After trial by jury, defendant was convicted and sentenced to life imprisonment. On appeal, Ghoram's conviction and sentence were reversed and the case remanded for a new trial. State v. Ghoram, 290 So.2d 850 (La.1974). Ghoram's retrial again resulted in a verdict of guilty and a sentence of life imprisonment. On this appeal, defendant relies on four assignments of error for reversal of his conviction and sentence.[1]

FACTS
About 2 o'clock in the morning on December 27, 1972, the Hernandez Ice Company in Baton Rouge was robbed by three black men, Jerry Ghoram, Robert Kennard and Billy Ray Self. Just prior to the robbery, these men proceeded to a location in close proximity to the ice company in a vehicle belonging to and driven by Ghoram. One of the men other than Ghoram went into the ice company to see how many employees were present. Ghoram had a .32 caliber automatic gun in his car. Two of the men, one of whom was armed with this gun, proceeded to enter the store to commit the robbery while Ghoram stayed in the car to act as a lookout. An employee of the ice company, Joseph Doucet, was on the platform assisting a customer, George Davis, purchase ice. The gunman pulled the gun on Doucet and ordered him into the store. He also ordered Davis to go inside, but apparently Davis did not hear him. It was at this time that the gunman shot Davis in the head causing him to fall to the platform floor. Doucet was taken at gunpoint into the store where the cashier, Arthur Rogers, was busy transferring change in the cash register. Doucet and Rogers were ordered to the floor. An accomplice was heard at the cash register. An unsuccessful search was made for a safe in the back room. Both Doucet and Rogers saw a third man telling the other two to hurry as someone was coming. This man was allegedly Jerry Ghoram. After taking a little less than $300.00 from the cash register, the men left. The gunman lost the gun on the way to the automobile in which the three men departed. The robbery was reported to the police. Davis was taken to the hospital where he died shortly thereafter from a gunshot wound to the head. A .32 caliber shell casing was found within three or four feet from where Davis lay. A young girl later saw a gun in a ditch near the ice company. She reported this to her uncle who retrieved it. The gun was later recovered from the uncle in Mississippi by the police. Ghoram was arrested a few days after the crime. In his car was found a pair of black gloves and a box of .32 caliber bullets. He gave a taped confession to the *93 police and was separately charged with the murder of Davis.
It was determined that the shell casing found near the body was from a bullet fired from the recovered gun; however, due to the damaged condition of the bullet removed from the victim's head, it could not be determined whether or not the bullet was fired from the gun in question. Nevertheless, it has similar class characteristics. Both Doucet and Rogers were able to identify the gun and black gloves as being similar to those used by the gunman. However, they were unable to identify Ghoram or any one of his companions. Robert Kennard and Billy Ray Self were also charged with the murder of Davis. Kennard entered a plea of guilty and was sentenced to serve fifteen years. Self was convicted and sentenced for the offense. Kennard testified as a witness for the state at Ghoram's first trial.
ASSIGNMENTS OF ERROR NOS. 3 AND 4
Robert Kennard, who had testified as a state witness at Ghoram's first trial, was called as a witness for the state in this trial. Kennard had previously pleaded guilty to the murder of George Davis and was then serving a fifteen-year sentence. He steadfastly refused to testify. The state asked to have him held in contempt of court and sought to introduce the transcript of his testimony at the prior trial on the ground that Kennard was "unavailable" as a witness at this trial. Kennard was found in contempt of court and sentenced therefor. The court ruled that his prior trial testimony was admissible, and the transcript of this testimony was read to the jury. Objections made by defense counsel form the basis of Assignments of Error Nos. 3 and 4.
Defendant argues that the trial court erred in permitting the introduction of Kennard's prior trial testimony, as he was not "unavailable." He urges that this denied him his right of confrontation, citingBarber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). He further complains about the manner in which the refusal of Kennard to testify was presented to the jury.
This case differs from Barber where the witness whose preliminary hearing testimony was sought to be introduced at trial was, at the time of trial, incarcerated in a federal prison and the government had not made a good faith effort to produce the witness at trial. That witness was held not to be "unavailable," and the transcript of his prior testimony was held inadmissible despite the availability of cross-examination at the earlier hearing. Here, although Kennard was present at trial, he refused to testify. We held that a witness who asserted his fifth amendment right was "unavailable" in State v. Dotch, 298 So.2d 742 (La.1974). Cf. La.Code Crim.P. art. 295 (1966). We perceive no appreciable difference between asserting a fifth amendment privilege and refusing to testify, insofar as the "unavailability" of the witness is concerned. In either instance, the testimony of the witness cannot be produced at trial-such a witness is"unavailable."[2] The Dotch ruling is applicable here. As in Dotch, the right of cross-examination was exercised at the *94 earlier trial; consequently, defendant's right of confrontation was not violated.Barber, relied upon by defendant, is clearly distinguishable from the instant case. Hence, we find no error in the trial judge's ruling allowing introduction of Kennard's prior trial testimony.
Likewise, we find no substance in defendant's other contention regarding the manner in which Kennard's refusal to testify was presented before the jury. It was necessary for the state to first establish this witness' refusal to testify before admission of his prior trial testimony could be requested. Prejudicial effect, if any, was unavoidable. We find no undue emphasis by the state in its questioning of Kennard and in establishing his refusal to testify.
In sum, Assignments of Error Nos. 3 and 4 are without merit.

ASSIGNMENT OF ERROR NO. 5
The state called Arthur Rogers as a witness. Rogers was cashier at the ice house at the time of the murder-robbery. He testified that he was unable to identify defendant or the other two perpetrators of the crime. On cross-examination, he reiterated his inability to identify the three robbers. On rebuttal, the state first brought an unidentified person (presumably Billy Ray Self) and then Robert Kennard before the witness and asked him if he could identify them. Rogers replied in the negative in each case. Defendant's objection on the ground of relevancy was overruled. He claims prejudice resulting from the procedure employed by the state. This forms the basis of Assignment of Error No. 5.
We are unable to understand the purpose for which the district attorney confronted the witness (Rogers) with these two parties. The witness had been steadfast in his testimony that he was unable to identify defendant or the other two men who had robbed him. Therefore, being confronted with two of the alleged perpetrators of the crime and being unable to identify them only corroborated his previous testimony that he was unable to identify any of the robbers. We can perceive of no possible prejudice to defendant resulting from this procedure. Hence, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 6
During the trial of this matter, the state introduced a taped confession given by defendant two days after his arrest. Defendant objected to its admission, urging that he was not informed of his Miranda rights before making the statement and that the statement had not been freely and voluntarily obtained.
Before a confession can be introduced in evidence, the state must affirmatively show that it was made freely and voluntarily and not under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451. It must also be established that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Defendant's first contention that he was not informed of his Miranda rights before making his confession is completely without substance. Defendant was arrested on December 28, 1972 at approximately 10:20 p.m. At about 7:00 p.m. on December 30, 1972, defendant, after being fully advised of his Miranda rights and executing a waiver of rights form, made a brief oral statement to police officers about his involvement in the alleged crime. This statement was never introduced into evidence. Later that evening, defendant made a more detailed taped confession which confession was begun at 11:25 p.m. and completed at 11:47 p.m. Prior to making this statement, Ghoram acknowledged that he had been previously advised *95 of his rights and had signed the waiver form. He was again advised of his rights and acknowledged his understanding of them. All of the foregoing is clearly reflected in the transcript of the taped confession as well as by the testimony of the police officers involved. Moreover, defendant did not even claim that he had not been advised of his rights or that he did not understand them when he took the stand outside the presence of the jury. Thus, we conclude that the record fully supports the finding that defendant was advised of his Miranda rights prior to making the custodial taped confession.
Secondly, defendant contends that the taped confession was not free and voluntary because it was obtained by a promise that he would either be turned over to the juvenile authorities or released to his parents. At the time, Ghoram was sixteen years of age.
According to the testimony of the police officers, no such promise or inducement was used in obtaining the confession. Rather, they testified that the confession was freely and voluntarily made. The officers further testified that Ghoram had questioned them about the possibility of his being released to the juvenile authorities or his parents and that they had notified him that such an inquiry would be made. Inquiry was made to the Family Court Center, and defendant was advised that this could not be done even though he was a juvenile since he was charged with a capital offense (murder). The officers testified that defendant was informed of this prior to making the confession.
Outside the presence of the jury, defendant testified that the officers had promised him that, if he told them what they wanted to know, he would be turned over to the juvenile authorities or released to his parents. He claimed that this is what induced him to make the statement. In rebuttal, the police officers denied that they made any such promise and reiterated their assertion that it was defendant who had initiated the inquiry about the possibility of being released to the juvenile authorities or his parents and that they had informed him that it could not be done.
Upon reviewing the entire record, we believe, as did the trial judge, that the state satisfied its burden of affirmatively showing that the confession was made freely and voluntarily and was not made under the influence of fear, duress, intimidation, menaces, threats, inducement or promises. La.R.S. 15:451 (1966). Hence, the confession was properly received into evidence. Assignment of Error No. 6 is without merit.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
DIXON and CALOGERO, JJ. concur.
NOTES
[1] Bills of Exceptions Nos. 1, 2, 7, 8 and 9 were neither briefed nor argued before this court and are therefore considered abandoned. State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).
[2] As stated in McCormick on Evidence:

Preliminarily it may be obeserved that while the rather general practice is to speak loosely of unavailability of the witness, the critical factor is actually the unavailability of his testimony. (footnote omitted) As will be seen, the witness may be physically present in court but his testimony nevertheless unavailable. . . .
(7) Refusal to testify. If a witness simply refuses to testify, despite the bringing to bear upon him of all appropriate judicial pressures, the conclusion that as a practical matter he is unavailable can scarcely be avoided, and that is the holding of the great weight of authority. (footnote omitted)
C. McCormick, Law of Evidence, § 253 at 608, 612 (2d ed. 1972).