369 So.2d 1295 (1979)
STATE of Louisiana
v.
Gerald EGENA and Billy Ray Jacob.
No. 63130.
Supreme Court of Louisiana.
April 9, 1979.
Harold Douglas, New Orleans, for Billy Ray Jacob.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for the State.
SUMMERS,[*] Chief Justice.
In a bill of information Gerald Egena and Billy Ray Jacob were charged with the September 23, 1972 armed robbery of Henrietta Thormahlen in violation of Article 64 of the Criminal Code. They were jointly tried on *1296 March 15, 1973 and found guilty as charged, the jury returned this verdict: "Guilty as Charge (sic) of Arm (sic) Robbery." Each was sentenced to forty years at hard labor. On appeal to this Court, their convictions and sentences were reversed and the case was remanded for a new trial. This Court discovered an error patent on the face of the record because the verdict failed to name each defendant and the finding as to each as required by Article 818 of the Code of Criminal Procedure.
On February 22, 1978 Egena and Jacob were again tried for armed robbery, and on this new trial each was found guilty as charged in a properly personalized verdict. Each was sentenced to serve forty years at hard labor. Both appealed, but Egena thereafter moved to dismiss his appeal and the motion was granted. This appeal, therefore, is on behalf of Jacob, who urges six of the ten assignments of error originally filed.
Assignments 1, 2 and 3: The defense contends that the trial judge erred in refusing to compel the attendance of the victim, Henrietta Thormahlen, at a pre-trial hearing and at the trial itself. Error is also claimed for allowing hearsay testimony at trial as to her out-of-court identification. Because all of these assignments relate to the ruling of the trial judge that the victim was unavailable for trial, they are consolidated here.
At the first trial Henrietta Thormahlen testified that she owned a small sweet shop on 1701 Agriculture Street in the city of New Orleans. She was 76 years old on September 23, 1972, and was attending her shop. The door was locked because she had been robbed before. That afternoon two Negro malesone tall, one shortknocked at the door. Mistaking one of them for a neighbor she admitted them. As the tall one entered he ordered his companion to lock the door. Both were armed. One of them then grabbed her around the neck and pistol whipped her, while the other opened the money drawer and demanded more money. She emptied her pockets, but he was not satisfied with the $35 thus obtained. He stuck his pistol in her face and demanded to know where the rest of the money was or he would kill her. She pointed to an icebox where an additional $40 was secreted.
They then dragged her through the door connecting the shop to her residence where they tied her to a chair with a sheet, gagging her at the same time. They then ransacked the house and departed with her jewelry. Defense counsel had ample opportunity to crossexamine Mrs. Thormahlen and did in fact do so with considerable skill and effect.
Prior to the first trial she identified Egena and Jacobs in a corporeal lineup at the police station. She also made an incourt identification at the first trial.
In the interim between the first trial on March 15, 1973 and the second trial on February 22, 1978 Henrietta Thormahlen was confined to the Audubon Health Care Center in New Orleans.
Prior to the 1978 trial the State filed a motion asking that the record of the victim's testimony at the first trial be introduced as evidence at the second trial. The motion alleged that the victim of the robbery was then confined to the Audubon Health Care Center and that her condition was such that she was too ill to appear in court.
To support the motion the State offered the letter of Dr. Louis A. Balart, a specialist in internal medicine and the victim's physician, which reads:
"Mrs. Thormahlen is a patient at Audubon Health Care Center where I am a physician. Her diagnoses are artherosclerotic cardio vascular and cerebrovascular disease with a stroke in 1976 and subsequent right sided hemiplegia. Her physical and mental status at the present time is one that precludes any appearance by Mrs. Thormahlen in a court of law."
Thereafter a hearing was held on the State's motion and on defendants' motion to suppress identification. Mrs. Thormahlen had been subpoenaed by the defense but did not appear at the hearing. The sheriff's *1297 return stated simply, "she's in the hospital." Whereupon, the defense moved for an instanter subpoenae of the victim whose identification of defendants was in question. In opposition to the instanter subpoena an Assistant District Attorney testified that Mrs. Thormahlen was at the Audubon Health Care Center where she was confined in a wheelchair. He testified that she had suffered a stroke and that her right side was visibly paralyzed. Later at the hearing Dr. Balart was called and testified as a medical expert that Mrs. Thormahlen had been in his care approximately one year, she was confined in the health care center, she was eighty-three years old, and had suffered a stroke about two and one-half years before, which left her partially paralyzed on the right side. She was senile and had cardiovascular disease and was mostly confined in a wheelchair. He was of the opinion that she could not come to court to testify.
Defense counsel also moved for the appointment of an independent physician to examine Mrs. Thormahlen and report to the court on her condition.
On the basis of the entire record of these hearings the trial judge, relying on Article 295 of the Code of Criminal Procedure, ruled that the witness Mrs. Thormahlen was "unavailable" and that her testimony at the first trial could be read to the jury in the second trial. The motion to appoint an independent physician was also denied.
Article 295 of the Code provides:
"The transcript of the testimony of a defendant who testified at the preliminary examination is admissible against him upon the trial of the case or, if relevant, in any subsequent judicial proceeding.
"The transcript of the testimony of any other witness who testified at the preliminary examination is admissible for any purpose in any subsequent proceeding in the case, on behalf of either party, if the court finds that the witness is dead, too ill to testify, absent from the state, or cannot be found, and that the absence of the witness was not procured by the party offering the testimony.
"The transcript of testimony given by a person at a preliminary examination may be used by any party in a subsequent judicial proceeding for the purpose of impeaching or contradicting the testimony of such person as a witness."
While the article does not refer to the transcript of a witness' testimony at a former trial, this Court has held in State v. Ghoram, 328 So.2d 91 (La.1976), that the transcript of a witness at a first trial could be introduced in his stead at a second one upon a proper showing that the prosecutorial authorities had made a good faith effort to obtain his presence at trial. Examples of such showings appear in this Court's decisions: died, State v. Ford, 336 So.2d 817 (La.1976); escaped from jail, State v. Owens, 338 So.2d 645 (La.1976); asserted his Fifth Amendment privilege, State v. Dotch, 298 So.2d 742 (La. 1974), cert. denied, 420 U.S. 976, 95 S.Ct. 1401, 43 L.Ed.2d 657; gone to sea, State v. Green, 296 So.2d 290 (La.1974); or refused to testify, even after being placed in contempt, State v. Ghoram, supra.
Permanent physical disability and failure of faculties due to disease or senility are good grounds of unavailability of a witness as a condition precedent to admitting, among other things, his former testimony. McCormick, Handbook of the Law of Evidence, § 253 (2d ed. by Cleary, 1972). See also State v. Milby, 345 So.2d 18 (La.1977) involving the denial of a continuance when the continuance was sought because of the inability of a bedridden witness to respond to a subpoena. Because the witness was "too ill to testify" the trial judge permitted her preliminary examination testimony to be read at the trial.
There is no merit to these assignments.
Assignment 6: It is the defense contention that no testimony of the victim identified the defendants at the first trial. Yet, the court, over defense objection, permitted Officer Poissenot to testify that such an identification was made.
*1298 At the hearing to suppress identification outside the presence of the jury, Officer Poissenot testified that Mrs. Thormahlen identified a picture of defendant Jacob during a police investigation of the instant crime. There was no defense objection. At the trial Officer Poissenot testified that when he presented photographs to Mrs. Thormahlen "an identification was made," but the witness was instructed by the prosecutor not to repeat what the lady said. Therefore, the officer did not mention which photographs were selected by Mrs. Thormahlen. Although testifying that an identification procedure was carried out, there was no reference to the persons identified.
Under those circumstances no error occurred, and no hearsay testimony of the victim's identification of the defendants was received in evidence.
Assignment 7: The defense claims that the prosecutor solicited testimony from its witness concerning other crimes, testimony which was inadmissible and furnished grounds for a mistrial which the trial judge denied.
The incident occurred during direct examination of Detective Wilbert Rome, a State witness and a fingerprint expert:
"Q. Okay, now the comparison of the print, what finger is that?
A. It is also the right index finger of Gerald Egena.
Q. Now where did the print on the right come from?
A. On the right, the enlargement of the inked impression?
Q. Right.
A. It came from a card in the file.
BY MR. DOUGLAS [defense counsel]
Your Honor, I move for a mistrial.
BY THE COURT:
Step up to the bench gentlemen.
(All counsellors stepped a few minutes later returned to open court.)
BY THE COURT:
The court denies the motion for a mistrial.
BY MR. DOUGLAS:
Note an objection for the record."
The witness' testimony was unresponsive, the prosecutor was seeking to elicit testimony that the print came from the defendant Egena, rather than from a card in the file. State v. Hegwood, 345 So.2d 1179 (La.1977). Moreover, this appeal does not concern Egena and if the quoted testimony be considered a reference to another crime it is not a reference to a crime committed by Jacob. Finally, no admonition by the court to the jury to disregard the statement was requested by defense counsel. The reason seems obvious. To dwell upon this innocuous reference to a card file as a reference to another crime would be to magnify the purport of that reference in the minds of the jury to the prejudice of Egena, not Jacob. La.Code Crim.Pro. art 770; State v. Matthews, 354 So.2d 552 (La.1978); State v. Fowlkes, 352 So.2d 208 (La.1977).
Assignment 8: The defense contends that a photograph of the victim's face depicting a cut and bruise was introduced into evidence by the State solely for the purpose of creating prejudice against defendant.
According to the defense, no issue at the trial concerned whether Mrs. Thormahlen was robbed, the only issue being whether Egena and Jacob were the offendersa question of identification.
In addition to the fact that no ground for the defense objection to the introduction of the photograph was stated as required by Article 841 of the Code of Criminal Procedure, the photograph was corroborative of the victim's testimony that a robbery did in fact occur and that she was hit with a "gun". No argument is made that the photograph is gruesome.
The question before the court when photographs are sought to be admitted in evidence is whether the probative value of such evidence outweighs its prejudicial effect. State v. Sheppard, 350 So.2d 615 (La.1977); State v. Williams, 343 So.2d 1026 (La.1977). In this Court's view no error occurred when the trial judge permitted introduction of the questioned photograph.
*1299 For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., concurs, not agreeing with the discussion of Assignments 7 & 8.
NOTES
[*] Judge Cecil C. Cutrer participated in this decision as Associate Justice Ad Hoc sitting in the place of Justice Marcus.