439 So.2d 420 (1983)
STATE of Louisiana
v.
Dennis NALL.
No. 82-KA-1777.
Supreme Court of Louisiana.
October 17, 1983.
*422 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., R. Greg Fowler, Asst. Dist. Atty., for plaintiff-appellee.
James Gravel, Gravel & Van Dyke, Alexandria, for defendant-appellant.
BLANCHE, Justice.[*]
The defendant in this case, Dennis Nall, was arrested and tried for first degree murder in Rapides Parish. At the first trial, the jury was unable to reach a verdict, and the court declared a mistrial. Defendant successfully moved for a change of venue, and a second trial was held in Caldwell Parish. At the latter trial, defendant was found guilty of first degree murder and sentenced to life imprisonment, without benefit of probation, parole or suspension of sentence. We now consider defendant's appeal from that judgment.
On March 3, 1979, Guy Kimball, an offshore worker, was returning to his home in Pineville, Louisiana at the conclusion of a seven-day workshift. After entering the house, Kimball was shot by an unknown assailant three times in the face and head with a revolver fired at close range. At the time of the shooting, Kimball's wife, Bobbie Kimball, and their children were away from the house, spending the night with Bobbie Kimball's mother. The next morning, Kimball's body was discovered by Mrs. Kimball and her oldest daughter, Sandra. Police investigation revealed that the house had been ransacked, giving the appearance that the murder was related to an attempted burglary of the residence. This explanation was rejected, however, as the sordid details of Guy Kimball's domestic life emerged. The investigation revealed that Kimball had purportedly engaged in numerous depraved sexual activities, forcing his wife andon at least one occasionhis minor daughter to participate. Kimball had apparently also beaten his family, and instilled in them a belief that he was capable of killing them. In response to her condition, Bobbie Kimball had on several occasions publicly suggested to different individuals that they kill her husband. Police became suspicious of defendant when it became evident that he was romantically involved with Mrs. Kimball. In 1979, defendant was arrested, along with one James Burdgess and Bobbie Kimball and charged with first degree murder in violation of R.S. 14:30. Bobbie Kimball ultimately pled guilty to conspiracy to commit murder; Burdgess was tried separately and convicted of first degree murder. State v. Burdgess, 82-KA-1476 (June 27, 1983).
At defendant's first trial, the State's case included the testimony of Bobbie Kimball regarding her knowledge of the conspiracy and that of her own involvement. Mrs. Kimball testified that she and defendant had been lovers and that she knew of the plan to kill her husband on March 3, 1979. She further testified that she had been instructed by defendant to wipe the fingerprints off the door facings and light fixtures of the Kimball home; and that after the crime had been committed, defendant had telephoned her at her mother's home to inform her that she and her children were "now safe" and that "things weren't very pretty" at her home. (Tr. pp. 102 and 103.) Despite the damaging testimony, the jury was unable to reach a verdict, and the court ordered a mistrial under Code of Criminal Procedure Article 775.
After defendant's second trial began the State once more called Bobbie Kimball to testify, expecting her to testify as she had in the former trial. However, to the surprise of the state, Mrs. Kimball's response to the questioning of the prosecutor was that she was unable to recall what had transpired at the time of the murder. Specifically, she could not remember the conversations with defendant about which she *423 had testified at the former trial. When questioned concerning why she did not recall the former testimony, Mrs. Kimball stated that her former testimony had been based on a statement made to police while she was under the influence of tranquilizers and for that reason she could not remember what she had said at the first trial. At this point, the State attempted to read aloud her testimony from the first trial, asking her each time whether she recalled making the particular statement. Defense counsel objected on the basis that impeachment was not proper where the State's witness had not made an inconsistent statement at trial, but simply testified to a lack of memory. The State argued that the introduction of prior testimony was admissible to impeach the witness or alternatively to show her past recorded recollections. The trial court, after argument outside the presence of the jury, admitted the former testimony.
In addition to Bobbie Kimball, the State called Sandra Kimball, the daughter. She testified to hearing conversations between defendant and her mother concerning the murder of her father, and corroborated her mother's prior testimony that the defendant's fingerprints were cleaned from the door facings. At the conclusion of the trial, the jury found defendant guilty of first degree murder.
Defendant's appeal consists of four assignments of error.

Assignment of Error 1
Defendant first assigns as error the introduction into evidence of Bobbie Kimball's testimony from the former trial, on the ground that the State improperly attempted to impeach its own witness. However, the state on appeal now asserts that it did not use her prior recorded testimony to impeach but used it to show past recollections recorded as the witness did not recall at the second trial anything which she had testified to previously. Accordingly, we need not address the question of whether the state could introduce Mrs. Kimball's testimony at the first trial under the theory of impeachment.
We do consider whether Mrs. Kimball's testimony was unavailable because of her loss of memory and that prior recorded testimony was admissible as an exception to the hearsay rule. Louisiana does not have statutory law which governs the admission of this type of hearsay evidence, therefore we resort to an examination of the general principles of evidence law in order to determine whether admission of the witness' previous testimony is appropriate in this case.
Use of former testimony where a declarant is unavailable to testify has long been recognized as an exception to the general prohibition against hearsay evidence. See 3 Wharton's Criminal Evidence § 651 (13th Ed.), Rule 804, Federal Rules of Evidence. The basis for such an exception is best stated by Wigmore:
The general principle upon which deposition and former testimony should be resorted to is the simple principle of necessity i.e., the absence of any other means of utilizing the witness' knowledge. If his testimony given anew in court cannot be had, it will be lost entirely for the purposes of doing justice if it is not received in the form in which it survives and can be had.
5 Wigmore, Evidence § 1402 (Chadbourn Rev.1974).
Applying this principle of necessity, courts have over the years developed a number of instances where a witness will be considered unavailable: where the witness is dead, State v. Ford, 336 So.2d 817 (La. 1976); where the witness is physically or mentally ill, State v. Egena, 369 So.2d 1295 (La.1979); if the witness is absent and cannot with due diligence be found, State v. Green, 296 So.2d 290 (La.1974), State v. Thomas, 290 So.2d 690 (La.1974); if the witness persistently refuses to testify, State v. Pearson, 336 So.2d 833 (La.1976), State v. Ghoram, 328 So.2d 91 (La.1976); or if the witness refuses to testify on the ground of recognized privilege, State v. Dotch, 298 So.2d 742 (La.1974).
In the latter two cases, a witness may actually be present in the courtroom, and yet be considered unavailable. The *424 critical factor emerging from these cases in making the determination of whether to apply the exception is not the unavailability of the witness himself, but the unavailability of his testimony. McCormick, Evidence (2nd Ed. 1972).
Whether a witness who testifies to a loss of memory should be included within the scope of `unavailability' has been the subject of some disagreement among jurisdictions. The Federal Rules of Evidence specifically provide that "unavailability as a witness" includes those situations in which the declarant testifies to a lack of memory of the subject matter of his statement. Federal Rule of Evidence 804(a). In determining whether a witness' loss of memory is legitimate, the federal rule vests much discretion in the trial court; only upon a showing of abuse of discretion will a ruling admitting former testimony due to declarant's subsequent loss of memory be disturbed on appeal. U.S. v. Amaya, 533 F.2d 188 (5th Cir.1976). On the other hand, an older line of state cases rejects memory loss as a type of unavailability: reasoning that, if a witness' former testimony can be used when he is in court, there would be little need for requiring live witnesses rather than depositions. See, Rio Grande S.R. Co. v. Campbell, 55 Colo. 493, 136 P. 68 (1913), Turner v. Missouri-Kansas-Texas Rwy. Co., 346 Mo. 28, 142 S.W.2d 455 (1940), Stein v. Swenson, 46 Minn. 360, 49 N.W. 55 (1891). This view, as evident from the age of the decisions, appears to us to represent a somewhat antiquated view of unavailability, which does not take into account more recent jurisprudence declaring a witness unavailable when he was present but simply refused to testify. See State v. Pearson, supra.
In deciding whether to admit the testimony of Ms. Kimball, this court must therefore determine whether her testimony was unavailable. We conclude that the same factors which counsel admission of former testimony where a witness has testified once but refuses to testify a second time require admission of the testimony in this case.
Mrs. Kimball gave former testimony to establish the defendant's participation in the killing of her husband and her efforts to cover up her lover's involvement. Now at this second trial and after her plea of guilty to the conspiracy, she could no longer remember or recall what had happened at the time of the murder. Thus her loss of memory effectively prevented the state from presenting to the jury evidence of the defendant's statements to her concerning the murder.
Although the trial judge also found the witness to be "hesitant, reluctant and hostile" he undoubtedly found her loss of memory genuine, for he stated that he would instruct the witness to answer to the best of her recollection and that if she stated she could not remember, then her previous testimony would be available to the state as past recollection recorded. We are unable to find an abuse of discretion in this regard and conclude that although the witness was present at court her loss of memory made her in fact "unavailable" and thus her former testimony became admissible.
This assignment of error lacks merit.

Assignment of Error 2
Defendant's second assignment of error deals with the failure of the trial court to instruct the jury with regard to the limited use of prior inconsistent statements when those statements were first introduced at trial. The instruction which the defendant sought would limit the jurors consideration of prior inconsistent statements only for the purpose of impeaching the credibility of the witness rather than as substantive evidence of the defendant's guilt. The trial judge refused to give such an instruction on the ground that the evidence was not being used to impeach. Later during the trial, he unaccountably gave the instruction despite his having permitted the testimony due to the witness' loss of memory. Defendant complains that the instruction came so late so as to be totally ineffective.
We have agreed that Mrs. Kimball's loss of memory made her constructively unavailable *425 at trial and that her testimony was properly admitted on that basis. Accordingly, we find no need for the instruction regardless of when it was given.
This assignment lacks merit.

Assignment of Error 3
In this assignment, defendant objects to the trial court's denial of a motion to quash the indictment on the grounds of double jeopardy. The defendant suggests that evidence in the first trial did not meet the legal sufficiency test of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and that jeopardy therefore attached at the trial's conclusion.
We find no merit in this contention. The first trial ended when the trial judge declared a mistrial because the jury was unable to reach a verdict. This was a proper ground for a mistrial under Code of Criminal Procedure Article 775, and for that reason jeopardy did not attach. Defendant, however, contends that although he was not convicted in the first trial, the evidence was legally insufficient to have supported a conviction had one been rendered. There is no basis in law for defendant's contention. Code of Criminal Procedure Article 591 provides that no one may be placed in jeopardy twice:
except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant.
Thus, regardless of whether the evidence might have proven legally insufficient to support a conviction, the court was entitled to grant a mistrial when the jury could not reach a verdict, and order a new trial, without violating the prohibition against double jeopardy.
This assignment of error lacks merit.

Assignment of Error 4
Lastly, defendant assigns as error the admission of Sandra Kimball's testimony as to what her mother told her about the killing of her father. At trial, defendant objected to the prosecution questioning Ms. Kimball as to her mother's statements on the ground that it was inadmissible hearsay. The trial court overruled this objection, finding that the statements made by Bobbie Kimball were statements made by a coconspirator and thus admissible under La. R.S. 15:455. Defendant argues that 15:455 is inapplicable, since no conspiracy between Bobbie Kimball and defendant was proven.
R.S. 15:455 provides that, in order for hearsay statements of a co-conspirator to be introduced into evidence a prima facie case of conspiracy must have been established. State v. Albert, 381 So.2d 424 (La.1980); State v. Sheppard, 350 So.2d 615 (La.1977). A prima facie case is presented when the State introduces evidence which, if unrebutted, would be sufficient to establish the facts of the conspiracy, State v. Gutter, 393 So.2d 700 (La.1981). In this case, Sandra Kimball had testified that she had overheard conversations between her mother and defendant concerning the killing of her father; that defendant had told her to wipe the fingerprints of defendant and co-defendant Burdgess; that her mother had taken her and her siblings to her grandparent's house the night before the murder; and that her mother and defendant were in fact lovers. Taken as a whole, this testimony, unrebutted, clearly demonstrates complicity between Bobbie Kimball and defendant.
This assignment of error is without merit.

DECREE
For the reasons assigned, the conviction and sentence of defendant, Dennis Nall are affirmed.
AFFIRMED.
NOTES
[*] Bailes, J. sitting for Justice Marcus.