571 So.2d 735 (1990)
STATE of Louisiana, Appellee,
v.
Bobby Ray SNEED and Eugene Wright, Appellants.
No. 21975-KA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1990.
*736 May & Beal by James E. Beal, Jonesboro, for appellants.
*737 William J. Guste, Jr., Atty. Gen., Baton Rouge, John C. Blake, Dist. Atty., Jonesboro, H. Russell Davis, Asst. Dist. Atty., Arcadia, for appellee.
Before MARVIN, C.J., SEXTON, J., and PRICE, J. Pro Tem.
SEXTON, Judge.
The defendants, Bobby Ray Sneed and Eugene Wright, were charged with and unanimously convicted of second degree murder, a violation of LSA-R.S. 14:30.1. Each defendant was sentenced to life imprisonment at hard labor without eligibility for parole, probation, or suspension of sentence for a period of 20 years.[1] On appeal, the defendants present six assignments of error. Finding none of the assignments of error have merit, we affirm the convictions and sentences of both defendants.

FACTS
During the early morning hours of June 13, 1974, Curtis E. Jones and his wife, Maude, were attacked as they slept in their home in Gibsland, Louisiana. The elderly couple were beaten, bound with wire, and robbed of approximately $700. After the attackers left, Mrs. Jones was able to loosen her bonds and summon help. By that time, however, Mr. Jones was dead as a result of the injuries he received in the attack.
Six men were involved in the crime. Three individuals, Charles Wayne Sneed, defendant Eugene Wright, and Arthur Gardner, entered the Jones residence; one of these three was armed with a shotgun. Defendant Bobby Ray Sneed and Andrew Rhodes stayed outside the home, apparently serving as lookouts. A sixth man, Alfred Critton, drove the automobile in which the men made their escape. Conflicting testimony revealed that either Charles Wayne Sneed or Arthur Gardner was the individual who severely beat Mr. Jones, ultimately killing him.
Bobby Ray Sneed, Eugene Wright, and Arthur Gardner were charged with first degree murder and found guilty of second degree murder. Each was sentenced to life imprisonment at hard labor. The defendants appealed their convictions, which were affirmed by the Louisiana Supreme Court. State v. Sneed, 328 So.2d 126 (La. 1976).
The defendants in the instant case, Bobby Ray Sneed and Eugene Wright, were granted post-conviction relief in 1986 based on the holding of the Louisiana Supreme Court in State v. Goodley, 398 So.2d 1068 (La.1981), appeal after remand, 423 So.2d 648 (La.1982). The defendants had been convicted by non-unanimous (10-2) verdicts, but the constitutional and statutory provisions, as interpreted in Goodley, require defendants charged with first degree murder to be convicted unanimously, even for responsive verdicts. Accordingly, the convictions were vacated and the defendants were retried on the charge of second degree murder. On May 1, 1987, they were unanimously convicted of second degree murder. The defendants now appeal this second conviction, alleging six assignments of error.[2]

ASSIGNMENT OF ERROR NO. 1
In their first assignment of error, the defendants assert that the trial court erred *738 in refusing their motions for severance. The motions to sever filed in the trial court alleged several grounds in support of the motions. On appeal, the defendants have limited their argument to a single ground, that the two defendants had antagonistic defenses which they were unable to adequately present in a single trial. Specifically, the antagonistic defenses are that Sneed contended that he did not enter the Jones household as Wright did, while Wright argued that Sneed was the mastermind of the planned robbery of Mr. and Mrs. Jones.
Jointly indicted defendants shall be tried jointly unless the state elects to try them separately or unless the court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance. LSA-C.Cr.P. Art. 704. Whether justice requires a severance must be determined by the facts of each case. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Turner, 365 So.2d 1352 (La.1978). A decision concerning severance is one resting in the sound discretion of the trial court, and a denial of a motion to sever will not be overturned on appeal absent a clear abuse of discretion. State v. Gaskin, 412 So.2d 1007 (La.1982); State v. Murphy, 463 So.2d 812 (La.App.2d Cir.1985), writ denied, 468 So.2d 570 (La.1985). A severance is necessary if the defenses of the co-defendants are mutually antagonistic to the extent a co-defendant attempts to place the blame on the other, causing each defendant to defend not only the charges brought against him by the state, but to defend against the allegations of his co-defendant as well. However, mere unsupported allegations that defenses will be antagonistic are not sufficient to require severance. State v. Prudholm, supra; State v. Turner, supra. Justice does not require a severance where only the extent of participation or degree of culpability of each defendant is at issue. Where the statements or testimony of both defendants implicate each as a principal, a severance is not mandated. State v. Gaskin, supra; State v. Simmons, 381 So.2d 803 (La. 1980), cert. denied, 449 U.S. 1036, 101 S.Ct. 612, 66 L.Ed.2d 498 (1980).
The evidence presented at trial fails to show the defendants had antagonistic defenses sufficient to warrant a severance. Although each defendant attempted to shift a greater proportion of the culpability for the crime away from himself, the testimony of each implicated both defendants as principals. Sneed's claim that he stayed outside the Jones residence and Wright's allegations that Sneed was the mastermind behind the armed robbery failed to absolve either of guilt for the second degree murder of Mr. Jones. Under either theory of the case, both Sneed and Wright fit the definition of principals as provided in LSA-R.S. 14:24. The trial court committed no error in denying the motions to sever.

ASSIGNMENT OF ERROR NO. 2
In their second assignment of error, the defendants contend that the trial court erred in declaring the defendants' motion for a bill of particulars to be satisfied prior to trial. Essentially, defendants' complaint is that although the state initially informed them that it intended to use the confessions of Alfred Critton, Andrew Rhodes, and Charles Wayne Sneed, it was not until five days prior to the trial date that the state filed an amended answer to the bill of particulars and motion for discovery in which it indicated it would use the testimony of both Alfred Critton, to whom it had granted immunity from prosecution, and Arthur Gardner, who had entered into a plea bargain in March 1987. Defendants allege that the testimony of these two witnesses was devastating to both defendants and altered the entire strategy of the defense. Defendants claim that notice that Critton and Gardner would be called as witnesses was not provided to them in a timely manner.
The record fails to indicate that defendants objected prior to trial to the state's amended bill of particulars or that they sought a continuance. They do not assert specific prejudice other than the untimeliness of the state's filing. Under these circumstances, there is no merit to this assignment of error. State v. Naas, 409 *739 So.2d 535 (La.1981), cert. denied, 457 U.S. 1119, 102 S.Ct. 2933, 73 L.Ed.2d 1332 (1982); State v. Vaccaro, 411 So.2d 415 (La.1982).

ASSIGNMENT OF ERROR NO. 3
In this assignment of error, the defendants complain that the court erred in permitting a transcript of Holston Fleming's testimony at the defendants' first trial to be read in lieu of his live testimony at the retrial. Defendants claim this effectively denied them the rights of confrontation and cross-examination. The extent of Mr. Fleming's testimony was that he was the next-door neighbor to Mr. and Mrs. Jones at the time of Mr. Jones' death, that he was awakened by his dogs barking at 1:20 a.m. on the date of Mr. Jones' death, that he heard Mr. Jones holler at the dogs, and then Mr. Fleming neither heard nor saw anything else.
Dr. William Patrick Gladney testified that he was the treating physician for the 83-year-old Mr. Fleming. Dr. Gladney testified that Mr. Fleming was the victim of arteriosclerosis and had suffered several cerebral hemorrhages beginning in January 1987. Since that time, Mr. Fleming was likely to become agitated or confused in stressful situations. In Dr. Gladney's professional opinion, it could well have been detrimental to Mr. Fleming's health if he were required to testify at trial.
LSA-C.Cr.P. Art. 295(B) relative to the admissibility at trial of a transcript of testimony of a witness who testified at the preliminary examination, provides, in pertinent part, that the transcript is admissible in any subsequent proceeding in the case if the court finds the witness is dead, too ill to testify, cannot be found, or is otherwise unavailable for testimony, and that the absence of the witness was not procured by the party offering the testimony. The precepts of this article have been extended to a situation, such as that presented in the instant case, where a witness at a first trial is unavailable to testify at a second trial. State v. Egena, 369 So.2d 1295 (La.1979); State v. Ghoram, 328 So.2d 91 (La.1976); State v. Johnson, 461 So.2d 1273 (La.App. 1st Cir.1984). Both State v. Egena and State v. Johnson dealt with witnesses like Mr. Fleming who were too ill to testify at a second trial.
The trial court committed no error in relying on the uncontradicted testimony of Dr. Gladney to determine that Mr. Fleming was unavailable to testify. The defendants were not thereby deprived of their right to confrontation and cross-examination, which was unrestricted at the first trial. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4
In this assignment of error, the defendants contend the trial court erred in permitting the transcript of the first trial testimony of Mrs. Maude Jones, Clyde Stinnett, Lamar Watson, and Samuel Mitchell to be admitted in lieu of their testimony at the second trial. These four witnesses were all deceased at the time of the second trial; defendants therefore concede their unavailability and hence the propriety of allowing their previous trial testimony to be read into evidence at the second trial.
The defendant's assignment on appeal, however, deals only with the former trial testimony of Mrs. Jones and Mr. Stinnett concerning certain remarks regarding race contained in the transcribed testimony.[3]
Mrs. Jones testified in response to a question by the district attorney regarding whether the assailants were black or white, that she was sure they were black. Similarly, Mr. Stinnett, when asked the race of Mr. O.D. Culver, a neighbor of the Joneses, replied that Mr. Culver was white. Defendants assert that there was no reason for these remarks concerning race or color to be read into the record in the presence of the jury and that a reversal of the conviction is required.
While defense counsel did make some objections to the introduction of the transcribed testimony, never did defendants *740 make any specific objections to the alleged racial remarks. In fact, during the "recreation" of the testimony of Mrs. Jones, defense counsel engaged in reading a portion of the transcript in which defense counsel at the first trial had continued a line of questioning concerning the race of the defendants. Because we are dealing with former testimony, the defense easily could have objected prior to trial to these remarks being read. The defendants had been informed of the state's intent to use this recorded testimony. Defendant's argument that the state had ample opportunity in the 13 years from the time the testimony at the first trial was transcribed until the date of the second trial to excise any racially offensive material is equally as applicable to defendants' opportunity to do the same. Any claim of error as to the alleged prejudicial nature of the remarks has been waived by the defendants' failure to object. LSA-C.Cr.P. Art. 841.
Moreover, it seems plain that Mrs. Jones' testimony was an attempt to help establish the identity of the intruders rather than an appeal to racial prejudice. Mrs. Jones' testimony was therefore material, relevant, and properly admissible. State v. Mitchell, 412 So.2d 547 (La.1982); State v. Jenkins, 340 So.2d 157 (La.1976).
Finally, while the testimony of Clyde Stinnett regarding the race of the neighbor, O.D. Culver, was irrelevant, this seems incapable of being termed an appeal to racial prejudice since Mr. Culver was not involved in the crime and was white. Any error in allowing Mr. Stinnett's testimony as to the race of his neighbor was clearly harmless and thus not grounds for reversal. LSA-C.Cr.P. Art. 921. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 5
By this assignment of error, the defendants allege that the trial court erred in ruling that certain exhibits were to be admitted into evidence. Specifically, defendants assert that a proper chain of custody had not been established prior to the admission of 20 various exhibits.
The proper foundation for the admission of demonstrative evidence is one of identification, either visual (testimony by a witness that the object exhibited is related to the case) or by a chain of custody. In either case, the ultimate question is whether it is more probable than not that the admitted evidence is the same as the object originally seized. Lack of positive identification goes to the weight of the evidence rather than to its admissibility. Ultimately, the admitted exhibit's connexity to the case is a factual matter for determination by the trier of fact. State v. Paster, 373 So.2d 170 (La.1979); State v. King, 355 So.2d 1305 (La.1978).
Although there was a significant period of time between the defendants' first trial and the retrial, we conclude that it was more probable than not that these exhibits were the ones related to the case. At some time after the original 1975 trial, the evidence was transferred to the Jackson Parish[4] clerk of court. From there, inexplicably, the box of evidence was discovered in the Jackson Parish sheriff's office. Notwithstanding this apparent break in the chain of custody of the evidence, we find the evidence was properly ruled to be admissible.
Without describing each individual piece of evidence separately,[5] we note that many of these exhibits were visually identified as those originally seized in connection with the case. Several of the exhibits were marked and labeled at the Northwest Louisiana Crime Lab; the criminalists involved identified the markings and labels as those they had placed on the exhibits and referenced them to the instant case. Additionally, the box which contained the evidence was positively identified, and testimony revealed that when the box was initially discovered in the Jackson Parish sheriff's office, *741 it was inventoried and found to contain the items of evidence which had been introduced at the first trial. If any lack in positive identification was caused by the break in the chain of custody, it affected the weight, not the admissibility, of the evidence. It was more probable than not that the exhibits introduced into evidence at trial were the ones associated with the crime. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 6
The final assignment of error alleges that the trial court was in error in denying the defendants' motion for mistrial which was sought following the testimony of state's witness, Arthur Gardner, regarding other crimes allegedly committed by defendant Sneed.
At the time of the statement at issue, the state was questioning Gardner as to the plans which he, the two defendants, and the others had made regarding the planned robbery of Mr. and Mrs. Jones. Apparently, Gardner stated that defendant Sneed had been involved in some type of marijuana transaction. Defense counsel objected and requested that the court admonish the jury to disregard the statement. The trial court sustained the objection, gave the requested admonition, and ordered both the state's question and Gardner's response thereto stricken from the record.[6] Defense counsel, outside the presence of the jury, then moved for a mistrial. The trial court denied the motion for mistrial, but did, once again, admonish the jury that it was to disregard the reference to Sneed's involvement with marijuana, that such testimony was immaterial and should have no bearing on the jury's consideration of the case. The trial court emphatically told the jury to entirely disregard Gardner's statement.
LSA-C.Cr.P. Art. 770 provides the mandatory grounds for mistrial. The article only applies to statements made by the judge, district attorney, or a court official. The statement by Arthur Gardner does not fall under the mandatory grounds for a mistrial, but is covered in the discretionary grounds for mistrial provided in LSA-C. Cr.P. Art. 771.
A mistrial under Article 771 is a drastic remedy and is warranted only when trial error results in substantial prejudice to the defendant, depriving him of a fair trial. State v. Smith, 418 So.2d 515 (La. (La.1981). The determination of whether prejudice has resulted lies in the trial court's sound discretion. State v. Hall, 549 So.2d 373 (La.App.2d Cir.1989), writ denied, 556 So.2d 1259 (La.1990); State v. McLeland, 456 So.2d 633 (La.App.2d Cir. 1984), writ denied, 461 So.2d 312 (La.1984).
Numerous cases have found no abuse of discretion in a trial court's decision not to grant a mistrial under LSA-C.Cr.P. Art. 771 after a witness's reference to other crimes allegedly committed by a defendant. See, e.g., State v. Douglas, 389 So.2d 1263 (La.1980); State v. McGuffey, 486 So.2d 1101 (La.App.2d Cir.1986); State v. Maiden, 463 So.2d 848 (La.App.2d Cir.1985); State v. Ruple, 437 So.2d 873 (La.App.2d Cir.1983).
In the instant case, we find no abuse of the trial court's discretion in its determination that the statement as to Sneed's involvement with marijuana did not warrant the drastic remedy of a mistrial. The defendants initially moved only for an admonition which was given by the trial court and the statement was additionally stricken from the record. Although the trial court denied the motion for a mistrial, it reiterated that the jury was not to consider the statement made by Arthur Gardner. We find the admonitions sufficient to assure the defendants received a fair trial. The jury was firmly, emphatically, and repeatedly informed that it should not consider the reference to Sneed's involvement in *742 marijuana transactions. We find no indication that the jury would have ignored these instructions and warnings. This assignment of error is therefore without merit.

CONCLUSION
As we find the defendants' assignments of error are all without merit, we affirm their convictions.
AFFIRMED.
NOTES
[1] This was the penalty provision for second degree murder in effect when the defendants committed the crime. Although the second degree murder statute has since been amended to reflect that the entire life sentence is to be served without benefit of parole, probation, or suspension of sentence, the law in effect when a crime is committed determines the penalty to be imposed, notwithstanding later legislation altering the penalty. State v. Wright, 384 So.2d 399 (La.1980).
[2] Testimony at trial revealed that Charles Wayne Sneed is currently serving a life sentence for his involvement in the crime. Although Charles Wayne Sneed was convicted of second degree murder after originally being charged with first degree murder, see State v. Sneed, 316 So.2d 372 (La.1975), we assume his conviction was by a unanimous jury, thereby obviating the need for a Goodley retrial. Arthur Gardner testified that in return for his testimony, the state would allow him to plead guilty to manslaughter and recommend that his sentence be for the time he has already served. All charges against Alfred Critton were dropped in return for his testimony. The record does not reveal what happened to Andrew Rhodes, who did not testify at the instant trial.
[3] In their appellate brief, the defendants do not argue any improprieties in the testimony of either Lamar Watson or Samuel Mitchell. Any objections to their testimony has therefore been waived.
[4] The record fails to adequately explain why this evidence, from a Bienville Parish crime in a Claiborne Parish trial (after a change of venue) was transferred to Jackson Parish.
[5] The brief filed on behalf of the State of Louisiana thoroughly outlines the testimony and identification relative to each piece of evidence.
[6] As the question and answer were stricken from the record, the exact nature of the statement is not apparent. Both parties appear to agree that it referred to defendant Sneed engaging in marijuana distribution. Importantly, we note that the defendants do not allege that the state's question, which was likewise stricken, was in any way designed to elicit such a reference to other crimes. We are therefore faced solely with the issue of a lay witness's unsolicited testimony regarding other crimes alleged to have been committed by the defendant.