HIGHTOWER, Judge.
A jury found Harold Jackson guilty as charged of possession of cocaine with intent to distribute, LSA-R.S. 40:967(A). Subsequently, the district court adjudicated defendant a second felony offender and, after an earlier appeal and remand, ordered incarceration at hard labor for fifteen years. Now before this court for a second time, he again presents numerous assignments of error. We affirm.
FACTS
On March 9, 1990, at approximately 2:00 a.m., officers of the Jonesboro Police Department observed a 1975 Chevrolet Nova weaving back and forth across the line dividing two northbound lanes of U.S. Highway 167. Suspecting the operator to be intoxicated, they stopped the vehicle after directing it into the parking lot of a bowling alley.
Police Chief McKinney ordered the woman driver out of the car, requested her license, and began a series of questions. Within moments, Officer Robinson instructed the three other occupants to exit and place their hands on the top of the vehicle. At about the same time, McKinney made some form of reference to drugs and directed the operator to empty her purse. Upon overhearing this, Jackson, previously positioned in the front passenger seat, bolted toward the bowling alley while holding a blue-gray jacket.
With Robinson in pursuit, Jackson fled around the side of the building and toward a wooded area. Officer Perry, another Jones-boro policeman who had just driven to the scene, also joined the chase. As defendant approached the woods, he fell and cast the jacket away. One of the officers then overtook Jackson, before further flight could occur.
Retrieving and checking the jacket, Robinson discovered three large clumps of a white substance, later identified as crack cocaine. After arresting all four persons, the officers conducted a search of the vehicle, uncovering a waist pouch containing Jackson’s driving license, $372 in cash, $135 in food stamps, a money order for $40, a utility company refund check, and a black billfold enclosing a small set of postal scales.
After a jury convicted defendant of possession of cocaine with an intent to distribute, the trial court adjudged him a second felony offender and assessed fifteen years at hard labor. See LSA-R.S. 40:967; LSA-R.S. 15:529.1. Jackson, in his ensuing appeal, asserted thirty assignments of error. Without *1379 addressing the other complaints, we vacated the sentence due to the district judge’s failure to rule on motions for a new trial and a post-verdict judgment of acquittal. See State v. Jackson, 614 So.2d 783 (La.App.2d Cir.1993). On remand, after denying those two requests, the lower court reimposed the identical minimum penalty. In the present appeal, the remaining specifications of error are again presented.
DISCUSSION

Juror Challenges for Cause

Defendant’s first two assignments of error concern the denial of his challenges for cause directed at two prospective jurors. In order to succeed in such a complaint, he must show an erroneous denial of the challenge and, also, prejudice from the ruling. State v. Ross, 623 So.2d 643 (La.1993); State v. Vanderpool, 493 So.2d 574 (La.1986).
LSA-C.Cr.P. Art. 797 provides grounds for challenges for cause by the state or the defendant. In that the trial court is vested with broad discretion in addressing such an issue, its ruling will not be disturbed on appeal unless a review of the entire voir dire indicates abuse. State v. Ross, supra; State v. Essex, 618 So.2d 659 (La.App.2d Cir.1993); State v. Scriber, 605 So.2d 661 (La.App.2d Cir.1992); State v. Haynes, 514 So.2d 1206 (La.App.2d Cir.1987).
During voir dire, prospective juror Michael Wayne Chatham disclosed that he worked regularly from 4:00 p.m. until midnight and had been requested, by his employer, to report to the job as soon as his jury obligation ended each day. Defense counsel asserted that such a schedule would preclude adequate attention to courtroom duties. The state responded that the arrangement afforded plenty of time for rest before the daily 9:00 a.m. sessions. After questioning Chat-ham, who gave assurances he could serve without any problem, the court refused to excuse this individual. Defendant then exercised his second peremptory challenge.
Although mere inconvenience is not grounds for challenging a juror, State v. Wiley, 513 So.2d 849 (La.App.2d Cir.1987), writ denied, 522 So.2d 1092 (La.1988), the defense argues that the probable loss of sleep created impartiality, as enumerated at LSA-C.Cr.P. Art. 797(2). The trial judge, however, sufficiently satisfied herself that the prospective jury member would not be adversely affected by his work schedule. Thus, we cannot say that the lower court abused its broad discretion by refusing to excuse Chatham. Cf. State v. Bourque, 622 So.2d 198 (La.1993); State v. Collins, 546 So.2d 1246 (La.App. 1st Cir.), writ denied, 558 So.2d 599 (La.1989).
Defendant additionally argues that another venireman showed a willingness to require defendant to prove himself innocent. Rickey McBride, who is a school teacher and father of a teenager, initially stated an awareness of the drug problem and his belief that persons arrested on narcotics charges should not be presumed innocent. However, extensive questioning by both sides reflected that the potential juror adequately understood the state faced the burden of proof.
Furthermore, upon defense inquiry, McBride indicated he only thought the law should be changed, yet well realized he must apply the existing standards and not his own ideas. Finding that the prospective juror had shown a complete readiness to implement the court’s instructions, the trial judge also rejected this challenge for cause. In our view, that decision did not constitute an abuse of discretion. Cf. State v. Griffin, 618 So.2d 680 (La.App.2d Cir.1993).
Of course, neither Chatham nor McBride actually served on the jury. Additionally, the record does not disclose that defendant exhausted his twelve peremptory challenges, but simply that he exercised eleven while the state presented four. Both sides also peremptorily excused venireman David Harper on their election slips. However, under the intendment of LSA-C.Cr.P. Art. 788, this dismissal could not be ascribed to the defense. Furthermore, at no time during voir dire did the trial judge admonish eithér attorney that their allotted number had been utilized.
Thus, defendant having failed to demonstrate use of all his peremptories, prejudice is not presumed even if the erroneous *1380 denial of a challenge could be established. See State v. Ross, supra; State v. Essex, supra. These two assignments of error lack merit.

Search and Seizure

In assignments 4, 6, and 25, Jackson asserts that no probable cause existed to stop or search the automobile, and that the trial court erred by denying his motion to suppress testimony about all events transpiring after the police first interfered. Specifically, he argues that officers acted in contravention of the Fourth Amendment to the Federal Constitution and Article 1, Section 5 of the Louisiana Constitution.
It is primarily contended that the Jonesboro authorities had no justification for initially stopping the automobile. However, the right of police to stop and interrogate upon reasonable suspicion of criminal conduct is recognized by LSA-C.Cr.P. Art. 215.1, as well as both federal and state jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Pautard, 485 So.2d 909 (La.1986); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953,104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Comparable with other situations, an investigatory stop of an automobile may be based upon actions which reasonably raise a suspicion of criminal activity, e.g., driving while intoxicated. State v. Elias, 509 So.2d 86 (La.App. 1st Cir.), writ denied, 512 So.2d 464 (La.1987). See also State v. Eppinette, 478 So.2d 679 (La.App. 2d Cir.1985); State v. Downer, 460 So.2d 1184 (La.App. 2d Cir.1984) (overruled on other grounds in State v. McGuire, 493 So.2d 559 (La.1986)).
In the case at bar, the officers followed the Chevrolet Nova for approximately three-quarters of a mile. During that interval, the automobile swerved over the dividing line between the two northbound lanes at least three different times. This unusual behavior, combined with the lateness of the hour, supported a reasonable suspicion that such erratic driving could be alcohol-related, and gave sufficient occasion for the police to stop the vehicle. Furthermore, we stand convinced that the pattern of operation described here exceeded the “minor deviations” discussed in State v. Vaughn, 448 So.2d 915 (La.App. 3d Cir.1984), heavily relied upon by defendant. Hence, the record fully discloses probable cause for the initial investigatory stop.
In certain situations, as recognized in State v. Landry, 588 So.2d 345 (La.1991), police officers also have authority to order that passengers disembark from a vehicle while affairs are transacted with the driver. Accord Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), recognizing the inordinate risk police officers encounter from persons seated in a vehicle. At the hearing on the motion to suppress, Officer Robinson stated that he asked the passengers to alight from the automobile and place their hands in view, as a precautionary measure. Understandably, the late hour and the fact that the travelers outnumbered the policemen heightened safety concerns. Indeed, the danger presented in these circumstances transcended the privacy interests of those persons still in the vehicle, allowing for a reasonable request that they exit the car. See State v. Landry, supra.
Subsequently, when Chief McKinney mentioned drugs and sought to have the driver empty her purse, Jackson ran from the scene toward the rear of the bowling alley. While flight, nervousness, or a startled look at the sight of a police officer, by itself, may be insufficient to justify an investigatory stop, such highly suspicious conduct may be one factor leading to a finding of reasonable cause upon considering the totality of the circumstances. State v. Belton, supra.
Here, defendant’s flight toward the woods occurred at 2:00 a.m., contemporaneously with a reference to drugs and a display request directed to the driver. These circumstances, viewed in their entirety, justified an investigatory stop based on reasonable cause to believe Jackson had committed, was committing, or was about to commit a crime. Hence, in pursuing him, the officers engaged in a permissible attempted investigatory detention.
*1381 Having discarded his jacket during the chase, defendant retained no reasonable expectation of privacy in the garment. Consequently, the subsequent seizure and search of the abandoned article, and discovery of the several large “rocks” of suspected cocaine, violated no custodial rights. See State v. Belton, supra; State v. Andrishok, 434 So.2d 389 (La.1983); State v. Montegut, 618 So.2d 883 (La.App. 4th Cir.1993); State v. Starks, 616 So.2d 943 (La.App. 1st Cir.1993).
After recovering the substantial quantity of contraband, the officers eventually arrested all occupants of the automobile and conducted an examination of the Nova. Under the “automobile exception” to the warrant requirement, law enforcement personnel may immediately, or even subsequently, search a vehicle which they have probable cause to believe contains contraband or evidence. California v. Acevedo, 500 U.S. 565, 111 S.Ct. 1982,114 L.Ed.2d 619 (1991). As a traditional practice, Louisiana courts have also required a showing of exigent circumstances. See generally State v. Wells, 593 So.2d 465 (La.App. 2d Cir.), writ denied, 598 So.2d 357 (La.1992).
When the total circumstances allow the conclusion that there is a fair probability that contraband or evidence of crime will be found in a particular location, probable cause to search exists. State v. Williams, 605 So.2d 716 (La.App. 2d Cir.1992), and state and federal authorities cited therein. As shown by the record, defendant’s jacket contained crack cocaine with a street value of approximately $3,000, and obviously in a quantity exceeding anything normally carried for personal consumption. Furthermore, Jackson’s previous occupancy of the car gave the officers reason to conclude, within a fair probability, that paraphernalia associated with drug dealing, or the fruits of such illegal transactions, would be found within the automobile. Under these circumstances, the police had probable cause to examine the vehicle interior.
In both California v. Acevedo, supra and California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), the Supreme Court indicated that the inherent mobility of a motor vehicle creates a conclusive presumption of exigency. Moreover, in the present case, urgent circumstances are disclosed. The Nova had been parked in the bowling alley entrance, blocking ingress and egress; the four occupants had been arrested; the situation arose at about 2:00 a.m.; and the car, left unattended, would have been accessible to other persons for several hours. During that period, of course, the vehicle could have been moved or evidence taken from it. Cf. State v. Wells, supra; State v. Colvin, 494 So.2d 1357 (La.App. 2d Cir.), writ denied, 497 So.2d 311 (La.1986).
Accordingly, the officers having acted lawfully in stopping the vehicle, and in recovering evidence both from defendant and the automobile, these three assignments of error lack merit.

Other Crimes Evidence/Drug Paraphernalia

Assignments of error numbers 3 and 21 concern the scales found in defendant’s wallet. It is argued that, by characterizing this item as “drug paraphernalia” during the opening statement and in testimony by narcotics expert Henry Whitehorn, the state alluded to other crimes (possession of drug paraphernalia, LSA-R.S. 40:1033), in contravention of LSA-C.E. Art. 404. We disagree.
Clearly, under LSA-C.E. Art. 404(B)(1), the scales could be introduced as evidence forming an integral part of the act or transaction addressed in the proceeding. Former jurisprudence termed such circumstances “res gestae.” See Official Comment (m) to LSA-C.E. Art. 404(B). Of course, the charged offense required proof of intent to distribute, which may well be. inferred from the scales and the quantity. Furthermore, we have repeatedly held drug paraphernalia, seized at the time of an arrest for a controlled dangerous substance violation, to be admissible at trial. See, e.g., State v. Lewis, 566 So.2d 1120 (La.App. 2d Cir.1990); State v. Bailey, 452 So.2d 756 (La.App. 2d Cir.), writ denied, 456 So.2d 161 (La.1984); State v. Green, 437 So.2d 302 (La.App. 2d Cir.), writ denied, 443 So.2d 1121 (La.1983). Obviously, such admissible evidence may be mentioned in the opening statement. LSA-C.Cr.P. Arts. 766, 769; cf. State v. Willis, 510 So.2d *1382 411 (La.App.2d Cir.1987), writ denied, 534 So.2d 440 (La.1988).

Relevancy

Assignments 7, 8, and 22 challenge the admissibility of, and testimony concerning, several items: the money (S-5), the food stamps (S-6), the wallet with the scales and razor blade (S-7), the waist pouch (S-4) containing all of these, and the utility refund check payable to a third party. Defendant argues these to be irrelevant and prejudicial.
Evidence is relevant if tending to show any fact of consequence to the determination of the action. LSA-C.E. Art. 401. However, if its probative value is substantially outweighed by the danger of unfair prejudice, evidence may be excluded. LSA-C.E. Art. 403. A trial judge is vested with wide discretion in determining relevancy, and his ruling will not be disturbed on appeal in the absence of abuse. State v. Miles, 402 So.2d 644 (La.1981).
The expert testimony of Officer Whitehorn associated the items in question with the sale of cocaine, rather than with ordinary use. He explained the possible utilization of postage scales and razor blades in selling cocaine, and also indicated that payment for drugs may occur by means of cash, food stamps, and refund checks. The arresting officers found the challenged exhibits and defendant’s driving license in the waist pouch, situated immediately adjacent to Jackson’s previous position in the vehicle. Thus, the evidence tended to show defendant’s relationship with the various objects and his intent to distribute the contraband. Hence, the trial judge did not abuse her discretion by admitting the highly probative testimony and exhibits.

Prior Arrest of State Witness

In assignment of error number 11, Jackson complains that the trial judge did not allow questioning about Officer Kevin Perry’s pending DWI charge.
Generally, in criminal cases, only an offense for which the witness has been convicted is admissible on the issue of credibility, and no inquiry is permitted into matters for which there has only been an arrest, a warrant, an indictment, a prosecution, or an acquittal. LSA-C.E. Art. 609.1(B). Although arrests may be used for the limited purpose of showing bias,[1] defendant made no reasonable contentions in that regard. Cf. State v. Griffin, supra; State v. Roberson, 448 So.2d 789 (La.App.2d Cir.1984). Nor, as correctly concluded by the trial court, does LSA-C.E. Art. 607(C) support defendant’s position.
In assignment number 12, it is argued that a mistrial should have been granted when the prosecutor stated he would assert the objection to questioning Perry about DWI charges “unless we’re going to have everyone be able to get into what’s pending ... to everybody.” After sustention of the state’s position, defense counsel contended the comment constituted an improper reference to other crimes committed by defendant. However, the trial court overruled the mistrial motion, cautioned the prosecution, and admonished the jury to disregard the statement.
Under LSA-C.Cr.P. Art. 770, a mistrial shall be ordered when the prosecutor refers directly or indirectly to “[a]nother crime committed or alleged to have been committed by the defendant....” Of course, mistrial is a drastic remedy, warranted only when substantial prejudice would otherwise result to the accused. State v. Edwards, 420 So.2d 663 (La.1982).
Although the expression by the prosecution related to inadmissible arrests, it also referred to “everybody,” i.e., all witnesses in the case. Thus, the statement does not appear to be the type of indirect remark drawing prejudicial attention toward the defendant and mandatorily repudiated by LSA-C.Cr.P. Art. 770. Rather, the comment properly comes within the scope of LSA-C.Cr.P. Art. 771, pertaining to utterances correctable by an admonition unless the prej *1383 udicial effect makes a fair trial impossible. In our opinion, the reference in question did not result in any prejudice substantial enough to warrant the drastic remedy of mistrial. Accordingly, we find no abuse of discretion in the trial court’s actions.

Juror-Witness Contact

In assignments 13, 14, and 15, defendant argues that, following allegedly improper contact between certain jurors and state witness Mike Walsworth, the trial court erred in not granting a mistrial, striking the officer’s earlier testimony, or using the alternate to replace one of the jury members.
It is well settled that communications between jurors and witnesses in a criminal trial, absent a showing that the actions prejudiced the defendant, furnish no grounds for upsetting a conviction. State v. Day, 414 So.2d 349 (La.1982); State v. Mims, 524 So.2d 526 (La.App. 2d Cir.), writ denied, 531 So.2d 267 (La.1988); State v. Green, supra. In the present case, Jackson failed to demonstrate any prejudice whatsoever.
At the conclusion of the first day of trial, Walsworth left the courtroom after testifying and, in a hallway, soon engaged two officers in conversation. Within minutes the court also released the jurors, some of whom proceeded down the same corridor. As the released witness simultaneously departed, he opened the door for an unidentified woman in the manner, as explained in a subsequent hearing, he had been “brought up to do.” He also shook hands with one jury member, Kenneth Guyotte, after that individual extended his hand in greeting. Only a very limited exchange of pleasantries occurred, and without any discussion of the case. Thus, it is obvious that the trial court acted correctly in denying the mistrial. Cf. State v. Guidry, 496 So.2d 650 (La.App. 1st Cir.1986), writ denied, 500 So.2d 420 (La.1987).
Nor should the witness’s testimony have been stricken based upon defense contentions that he violated the rule of sequestration. Clearly, his casual, innocuous courtesies did not impinge upon that order. Furthermore, Walsworth had already been released from the restriction. Simply put, defendant’s motion borders on absurdity.
It is also urged that Guyotte should have been replaced by the alternate. However, as noted above, defendant revealed no prejudice from the exchanged pleasantries. Furthermore, the judge found that the conduct by no measure approached undue influence. The trial court has wide latitude in determining whether to disqualify a juror. See LSA-C.Cr.P. Arts. 787, 789; State v. Kohler, 434 So.2d 1110 (La.App. 1st Cir.1983). Absent a showing that the contact affected the jury member’s impartiality, we find no abuse of discretion. Cf. State v. Ducksworth, 496 So.2d 624 (La.App. 1st Cir.1986). These three assignments are without merit.

Chain of Custody

Contrary to defendant’s contentions in assignment of error number 16, the state established an adequate chain of custody anent the cocaine taken from the jacket.
Before being admitted, an item of evidence must be sufficiently identified as having been involved in the occurrence in question. State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.), writ denied, 619 So.2d 573 (La.1993). The ultimate question is whether more probably than not the evidence is the object originally seized. Lack of positive identification goes to weight, rather than admissibility, of the evidence. State v. Sneed, 571 So.2d 735 (La.App. 2d Cir.1990), and authorities cited therein.
Here, the state more than satisfactorily established the white matter found in defendant’s jacket to be the same substance introduced into evidence and identified by the laboratory expert as crack cocaine. The record clearly reveals all links in the transfer of the contraband from the time of initial discovery, to the police evidence locker, to the crime lab, and back to the Jonesboro police safe.
Of particular importance, laboratory technician Linda Armstrong explained, without objection, the method used to analyze the substance and determine its chemical character. Qualified as an expert, she indicated *1384 that testing of a portion of the three “rocks” proved the items to be crack cocaine. Although defendant argues that examining one portion of the contraband does not prove its entirety to be similar and thus somehow breaks the chain of custody, this contention addresses weight rather than admissibility of the evidence. See State v. Molbert, 302 So.2d 276 (La.1974) (testing 25 tablets of 200 originally seized did not preclude admissibility of the remaining 175). See also State v. Washington, 597 So.2d 1084 (La.App. 2d Cir.1992). This is similarly true with respect to the complaint that the state failed to call everyone who had access to the laboratory safe. See State v. Griffin, supra; State v. Sneed, supra.
Assignments of error numbers 9 and 10 specifically challenge the admission of the evidence transfer form (S — 10), an element of the chain of custody. First, defendant claim's the state failed to establish a foundation for its introduction. However, Officer Perry and lab technician Susan Rutledge clearly identified the document and their handwriting thereon. Such testimony is proper for laying a foundation. LSA-C.E. Art. 901. Second, it is complained that the state presented a copy of the instrument. Yet, the exhibit is shown to be identical to the original, which Rutledge produced during cross-examination. Under these circumstances, the duplicate could correctly be admitted. LSA-C.E. Art. 1003. Third, defendant maintains the document is hearsay. The record, however, reveals the form to have been one ordinarily filled out during the course of similar exchanges of contraband. Thus, having been completed as part of the “regularly conducted and regularly recorded activities” of the crime lab, the writing qualifies as a public records exception to the hearsay rule. LSA-C.E. Art. 803(8)(a)(i). Furthermore, the exhibit merely constituted cumulative evidence confirming testimony by the officer and the laboratory technician that the transaction occurred. Hence, no substantial admissibility problem is posed. LSA-C.Cr.P. Art. 921; State v. Andrews, 369 So.2d 1049 (La.1979); State v. Bass, 595 So.2d 820 (La.App. 2d Cir.), writ denied, 598 So.2d 373 (La.1992); see also, State v. Sanders, 539 So.2d 114 (La.App. 2d Cir.), writ denied, 546 So.2d 1212 (La.1989).
These three assignments of error lack merit.

Expert Testimony

Despite assignments 17,18,19, and 20, our review of the record reveals no error concerning the testimony of the state’s narcotics investigation expert, Officer Whitehorn.
Clearly, in a criminal case, such a witness cannot express an opinion as to the guilt or innocence of the accused and, thus, usurp the province of the jury. LSA-C.E. Art. 704. Generally too, it is improper to present hypothetical inquiries with facts very similar or identical to the case at hand and then ask whether these lead to the conclusion that a person is “dealing” in drugs. State v. White, 450 So.2d 648 (La.1984); State v. Montana 421 So.2d 895 (La.1982); State v. Wheeler, 416 So.2d 78 (La.1982). Even so, the jurisprudence does not preclude questions covering the habits of users, the quantities involved, the value of narcotics found, or the methods of packaging for sale and use. See State v. Wheeler, supra; State v. Daniels, supra.
In the ease sub judice, the expert did not conclude that either Jackson, or a hypothetical person under similar facts, intended to distribute. Instead, the questions of which defendant complains all related to amounts of cocaine consistent with distribution and/or possession, the potential street value of the crack cocaine discovered, and the significance of certain other items such as razor blades and scales in the commerce of illegal drugs. Such queries are clearly permissible.
Nor did the trial court err in allowing Whitehorn to testify about how many twenty-dollar rocks of crack could be produced from 33 grams of the substance. Earlier, the lab technician established the total weight of the cocaine.
In a final assault on the expert testimony, defendant complains that the trial court allowed the state to lead the witness and show him items not previously admitted *1385 into evidence. Under LSA-C.E. Art. 611(C), however, leading questions are explicitly permitted in examining an expert. Furthermore, although the razor blade and postal scales had not then been introduced, the court correctly accepted these exhibits later in the proceedings. The record also indicates that the state sought Officer White-horn’s knowledge of how these articles are utilized in the drug trade in order to establish a foundation for their admissibility. Clearly, a trial judge may admit evidence conditioned upon a subsequent “connecting up.” LSA-C.E. Art. 104(B). Thus, defendant demonstrated no prejudice or error. Cf. State v. Mims, supra.
These four assignments of error lack merit.

Prior Conviction

In assignment number 24, Jackson contends the trial court erred in allowing evidence of his probation and suspended sentence in reference to a previous drug conviction.
On direct examination, defense counsel asked defendant why he ran when the police mentioned drugs at the scene of the traffic stop. Jackson responded that he had been on probation due to a drug charge, and, in that regard, received instructions to leave any situation upon even the mention of drugs. On cross-examination, the prosecution asked if one of the conditions of his probation required that he refrain from any future criminal activity. The court overruled an objection, after the state argued that the existence of this probationary requirement gave the accused an additional reason to avoid telling the truth.
Ordinarily, only the fact of a conviction, the offense, the date thereof, and the sentence imposed is admissible when examining a witness about such a matter. LSA-C.E. Art. 609.1(C). Jurisprudence prior to the enactment of the Code of Evidence indicated the specifies of probation should not be admissible to impeach a defendant regarding a prior criminal conviction. See generally State v. Connor, 403 So.2d 678 (La.1981); State v. Martin, 400 So.2d 1063 (La.1981). However, pursuant to LSA-C.E. Art. 609.-1(C)(3), the details of a conviction may be presented when the probative value on the credibility issue outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.
Here, the state made no inquiry into the conditions of probation beyond the LSA-C.Cr.P. Art. 895 requirement of abstention from criminal activity. In our view, the probative value in impeaching the witness outweighed any prejudice. Previously, in his own direct testimony, Jackson announced the fact of his probationary status. Thus, it is unlikely that the prosecution’s limited inquiry could convince the jury to convict defendant as simply a “bad person.” Cf. State v. Tassin, 536 So.2d 402 (La.1988), cert. denied, 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 159 (1989); State v. Wiley, 614 So.2d 862 (La.App. 2d Cir.1993). This assignment lacks merit.

Three Other Assignments

We have also examined, and found merit-less, three other assignments of error:
Number 5—that the evidence did not conclusively show defendant owned or possessed the jacket.
Number 23—that S-14 (a petition filed in a forfeiture proceeding and asserting defendant’s ownership of the vehicle) is irrelevant.
Number 27—that the trial court erred in denying defendant’s motion for new trial.

Post-Verdict Judgment of Acquittal

In his twenty-sixth assignment of error, emanating from the denial of a motion for post-verdict acquittal, defendant maintains his conviction cannot be sustained by the evidence.
The criteria for evaluating sufficiency of evidence is whether, upon viewing evidence in the light most favorable to the prosecution, any rational trier of fact could have found all elements of the crime proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Washington, supra. That standard, initially enunciated in Jack *1386 son, and now legislatively embodied within LSA-C.Cr.P. Art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La.1983); State v. Perry, 612 So.2d 986 (La.App. 2d Cir.1993).
Clearly, it is the function of the judge or jury to assess credibility and resolve conflicting testimony. State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993); State v. Bonnett, 524 So.2d 932 (La.App. 2d Cir.), writ denied, 532 So.2d 148 (La.1988). Where the trier of fact has made a rational determination, an appellate court should not disturb it. State v. Mussall, 523 So.2d 1305 (La.1988); State v. Combs, 600 So.2d 751 (La.App. 2d Cir.), writ denied, 604 So.2d 973 (La.1992). Indeed, in the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the fact-trier, is sufficient support for the requisite factual conclusion. State v. Reaves, 569 So.2d 650 (La.App. 2d Cir. 1990), writ denied, 576 So.2d 25 (La.1991); State v. Shepherd, 566 So.2d 1127 (La.App. 2d Cir.1990).
The crime of possession with intent to distribute cocaine requires the state to show the defendant possessed the controlled dangerous substance with specific intent to distribute it. LSA-R.S. 40:967(A)(1); State v. Elzie, 343 So.2d 712 (La.1977). Proof of actual possession is not essential; the prosecution need only show the defendant exercised dominion or control over the illegal substance. State v. Walker, 369 So.2d 1345 (La.1979); State v. Washington, supra; State v. Johnson, 513 So.2d 832 (La.App. 2d Cir. 1987), writ denied, 519 So.2d 124 (La.1988). Furthermore, evidence of flight, concealment, and attempt to avoid apprehension may serve to indicate consciousness of guilt. State v. Daniels, supra.
Where intent to distribute a controlled substance is at issue, the fact-trier may consider factors such as 1) whether the defendant actually distributed or attempted to distribute the drug, 2) whether it existed in a form usually associated with distribution, 3) whether the amount is such as to create a presumption of intent to distribute, 4) whether any paraphernalia evidenced an intent to distribute, and 5) whether the amount involved is inconsistent with personal use. State v. House, 325 So.2d 222 (La.1975); State v. Lowery, 609 So.2d 1125 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993); State v. Tyler, 544 So.2d 495 (La.App. 2d Cir.1989). Intent, of course, may be inferred from surrounding circumstances. State v. Lowery, supra.
In the present case, officers testified that in the automobile they found a waist pouch containing defendant’s driving license, over $370 in cash, $135 in food stamps, and a wallet containing a single-edged razor blade and postal scales. In addition, the crime lab technician identified the white substance discovered in the jacket as 33 grams of crack cocaine.
Whitehorn, the state police narcotics investigator, gave expert testimony with which the jury could conclude that the items in defendant’s possession disclosed intent to traffic in illegal drugs. Specifically, this witness stated that 33 grams of the illegal substance in the form displayed in exhibit S-3 could produce 165 street-marketable “rocks” worth $3300, and that freshly manufactured crack is commonly dried in paper towels, the same wrapping contained in Jackson’s jacket.
Certainly, when the record is viewed in the light most favorable to the prosecution, a rational juror could find guilt beyond a reasonable doubt. Thus, the assignment of error falls.

Abandoned Assignment

As his twenty-eighth assignment, Jackson initially complained the district court erred, as a matter of law, in adjudicating him an habitual offender. However, having been neither briefed nor argued, this contention is considered abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writ denied, 558 So.2d 1123 (La.1990).

*1387
Excessive Sentence

Defendant, in his last assignment of error, contends that his term of imprisonment is excessive. Yet the record does not contain a motion to reconsider sentence, as necessitated by LSA-C.Cr.P. Art. 881.1. That article, applicable thirty days following the effective date of the new sentencing guidelines (January 1, 1992, per Louisiana Register 17:12), precludes “the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.” Here, failing to comply with the provisions following his sentencing on April 15, 1993, defendant is barred from presenting a claim of excessiveness. See State v. Green, 621 So.2d 629 (La.App. 2d Cir.1993); State v. Bush, 604 So.2d 1383 (La.App. 2d Cir.1992).
CONCLUSION
For the foregoing reasons, defendant’s conviction and sentence are affirmed.
AFFIRMED.

. See G. Pugh, R. Force, G. Rault, Jr., and K. Triche, Handbook on Louisiana Evidence Law, Authors’ Note 2 to C.E. Art. 609.1, p. 370 (1993).